UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ROBERT KINNEY,** | : | Civil Action No. 04-5252 (MLC) |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OPINION |
| **TRUSTEES OF PRINCETON UNIVERSITY, et al.,** | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of Plaintiff Robert J. Kinney ("Plaintiff") for Sanctions pursuant to Federal Rules of Civil Procedure 26 and 37. Defendant Trustees of Princeton University (the "University") opposes the Motion. The University produced seventy four pages of relevant documents four days before the final pretrial conference. These documents had been requested by Plaintiff two years prior while discovery was ongoing. The Court reviewed the written submissions of the parties and conducted oral argument on February 26, 2007. For the reasons that follow, Plaintiff's Motion for Sanctions is granted in part and denied in part.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

*A.     Factual Background and Procedural History*

On June 3, 2003, Plaintiff, a nine year Princeton University employee, filed an internal hostile work environment sexual harassment complaint against his supervisor, Gary Ufer, pursuant to Princeton University's Sexual Harassment Policy. (Pl.'s Br. at 4). In accordance

1

with its policy, the University conducted an internal investigation of Plaintiff's complaint, and the matter was heard by the University's sexual harassment panel in August 2003. (University's Opp. Br. at 5; Pl.'s Br. at 4).

The Princeton University Sexual Harassment Panel Subcommittee concluded that Mr. Ufer's conduct violated the University's Policy on Sexual Harassment by creating a hostile and intimidating work environment. (Pl.'s Br. at 4). The committee recommended the following remedial actions: (1) Mr. Ufer's pay raise was reduced by half; (2) Mr. Ufer was relieved of supervisory authority over the Payroll department for at least six months; (3) Mr. Ufer was required to review the University's policy with Fred Clarke, Director of Labor Relations; and (4) a consultant was to be retained to examine management practices and employee roles in the Payroll Department. (University's Opp. Br. at 5). Plaintiff was notified of the committee's findings and recommendations by memorandum dated September 5, 2003. (See Pl.'s Ex. A).

As a result of the committee's findings, John ("Jack") Yuncza was appointed Acting Payroll Manager. (University's Opp. Br. at 5). Mr. Yuncza met with each Payroll department employee at the initiation of his assignment and communicated with them regularly. Id. Mr. Yuncza was Acting Payroll Manager at the end of September, when Plaintiff began his disability leave, and remained in this position for several months. Id. at 6.

On October 27, 2004, Plaintiff filed a complaint against the University alleging that the University failed to implement the recommendations of the subcommittee by failing to (1) remove Mr. Ufer from his supervisory duties involving the Payroll Department, (2) require Mr. Ufer to be psychologically evaluated, and (3) counsel Mr. Ufer on the University's Policies on Sexual Harassment. (Pl.'s Br. at 4-5). As a result of Mr. Ufer's continued involvement in the

2

Payroll Department as Payroll Manager, Plaintiff alleged that he was unable to return to his place of work.  Id. at 4.  Plaintiff was ultimately terminated for "abandoning his job."  Id. at 5.

Defendants Princeton University, Matthew Kent and Maureen Nash filed an Answer on December 20, 2004.  (University's Opp. Br. at 6).  The University contended that Jack Yuncza supervised the payroll department after Mr. Ufer was removed from that duty and that the workplace violence task force team was unrelated to the harassment issue.  (Pl.'s Br. at 5).  The University further contended that Mr. Ufer posed no threat to Plaintiff.  Id.

### B.    *Motion for Sanctions*

On February 14, 2005, Plaintiff requested documents from the University regarding Plaintiff's claims and allegations, including Plaintiff's claim that the University failed to implement the remedial measures pertaining to Mr. Ufer.  Id.  On February 15, 2005, Defendants Princeton, Mr. Kent, and Ms. Nash served their Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a).  (University's Opp. Br. at 6).  Defendants included Mr. Yuncza as a person likely to have discovery information and described his knowledge as follows: "Mr. Yuncza is employed in the Treasurer's Office, and has knowledge pertaining to the supervision and operation of the Payroll Department after August 2003."  Id. at 7.

Since discovery began, over 12 depositions have been taken and over thirteen hundred documents have been produced by the University.  (Pl.'s Br. at 5).  During this time, the University produced only one document authored by Mr. Yuncza which showed his direct interaction with the Payroll Department or its members.  Id.  Further, the University did not produce any notes, agendas, or hand written notes regarding the task force investigation of Mr. Ufer.  Id.  Fact discovery ended on December 19, 2005.  Id.

While preparing the pretrial order, University counsel learned that Mr. Yuncza had a small desk file of documents that related to his role as Acting Payroll Manager. (University's Opp. Br. at 7). University counsel received these documents on January 12, 2007. Id. at 8. On January 15, 2007, in preparation for the Final Pretrial Conference, the parties met to confer regarding the pretrial memorandum. (Pl.'s Br. at 6). At this meeting, University counsel handed Plaintiff's counsel the documents received from Mr. Yuncza which she did not immediately review. Id. On January 17, 2007, Plaintiff received and reviewed the University's proposed exhibit list, which included over twenty documents, including handwritten notes, proposed evaluations, e-mail correspondence and workplace violence task force team notes regarding Plaintiff, that were dated between August and September 2003. Id. These documents had been requested by Plaintiff two years ago while discovery was on-going. Id.

Plaintiff filed the present motion for sanctions on January 20, 2007. (See Dkt. no. 04-5252, entry no. 62). Plaintiff alleges that the documents at issue were crucial to the present action. (Pl.'s Br. at 7). Plaintiff further alleges that the University's failure to produce these relevant documents was not harmless because it impacted Plaintiff's decision to depose certain witnesses. Id. Plaintiff contends that the University's untimely production is deceptive and unfair under the Rules. Id. Plaintiff further contends that the prejudice caused to Plaintiff by the University's conduct cannot be cured. Id. at 8. Therefore, Plaintiff moves for an Order (1) striking Defendant's Affirmative Defenses, (2) excluding the testimony of Jack Yuncza and all documents produced on January 15, 2007, and (3) granting monetary sanctions for the time spent in preparing this Motion. Id. at 7.

The University filed opposition to Plaintiff's motion for sanctions on February 6, 2007.

(See Dkt. no. 04-5252, entry no. 64). The University concedes that its production of the documents was untimely, but argues that Plaintiff was not prejudiced because many of the documents were authored or received by Plaintiff himself. (University's Opp. Br. at 4, 10). The University further argues that Mr. Yuncza's relevance to the case cannot be a surprise to Plaintiff. Id. at 4. The University also argues that exclusion of evidence is too drastic a sanction in this case. Id. at 10.

## II.     DISCUSSION

In his motion for sanctions, Plaintiff alleges that the documents at issue were key to the present action. (Pl.'s Br. at 7). Plaintiff further alleges that the University's failure to produce these relevant documents was not harmless under Federal Rule of Civil Procedure 26 because it impacted Plaintiff's trial strategy and decision to depose certain witnesses. Id. Plaintiff contends that the University's failure to produce these documents when they were requested two years ago during discovery was deceptive and unfair under the Rules. Id. Plaintiff further contends that the prejudice caused to Plaintiff by the University's conduct cannot be cured at this late stage. Id. at 8. As a result, Plaintiff moves for an Order (1) striking Defendant's Affirmative Defenses, (2) excluding the testimony of Jack Yuncza and all documents produced on January 15, 2007, and (3) granting monetary sanctions for the time spent in preparing this Motion. Id. at 7.

In opposition, the University concedes that its production of the documents was untimely and that it "failed to supplement its discovery responses within the discovery period as required by Rule 26," but argues that Plaintiff was not prejudiced because many of the documents were authored or received by Plaintiff. (University's Opp. Br. at 4, 10). The University further argues that Mr. Yuncza was identified as a witness two years ago and has been repeatedly identified in

the deposition testimony of various witnesses. Id. at 4. The University also contends that barring its affirmative defenses would go "well beyond any connection with the documents recently produced." Id. The University argues that exclusion of evidence is too drastic a sanction especially because (1) the information is crucial to the University's defense, (2) no trial date has been set, (3) expert discovery is still to be conducted, and (4) there is no showing of bad faith on the part of the University or its counsel. Id. at 10. The University further argues that fees are not appropriate in this case because Plaintiff made no good faith attempt to resolve these issues prior to filing a motion for sanctions as required by Local Rule 37.1. Id. at 18.

### *A. Federal Rule of Civil Procedure 26*

Federal Rule of Civil Procedure 26 governs initial disclosures and provides in relevant part:

> [A] party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information; (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses . . .

FED. R. CIV. P. 26(a)(1)(A) and (B). Rule 26(e) further imposes a continuous duty on all parties "to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1).

In the present matter, the University admits that the production of Mr. Yuncza's desk file

was untimely. (University's Opp. Br. at 4). As part of its initial disclosures under Rule 26, the University provided Mr. Yuncza's name and described him as being employed in the Treasurer's Office and having knowledge "pertaining to the supervision and operation of the Payroll Department after August 2003." (University's Opp. Br. at 7). On February 14, 2005, Plaintiff requested documents from the University regarding Plaintiff's claims and allegations, including Plaintiff's claim that the University failed to implement the remedial measures pertaining to Mr. Ufer. The University's counsel conceded at oral argument that the documents at issue, as they pertained to Mr. Yuncza, were relevant and discoverable documents. However, the University did not produce these documents to Plaintiff's counsel until January 15, 2007, after discovery had ended on December 19, 2005 and two years after Plaintiff had requested the documents. Therefore, the Court finds that the University violated Rule 26 by failing to produce these crucial documents before the end of discovery.

*B.     Sanctions*

Under Federal Rule of Civil Procedure 37, if a party fails to make a Rule 26(a) or 26(e) disclosure, any other party may move for sanctions. Rule 37(c)(1) provides:

> (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

7

FED. R. CIV. P. 37(c)(1).  Rule 37 provides for additional sanctions as follows:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

FED. R. CIV. P. 37(b)(2)(A), (B), and (C).

### 1. Substantial Justification

"Substantial justification" requires "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The proponent's position must have a reasonable basis in law and fact.  The test is satisfied if there exists a genuine dispute concerning compliance." Fitz, Inc. v. Ralph Wilson Plastics, Co., 174 F.R.D. 587, 591 (D.N.J. 1997) (citing Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

In the present case, the University has not met its burden of showing substantial justification for its violation of Rule 26.  The University offered no substantial justification for its failure to produce the documents at oral argument, but instead stated that it simply did not receive these relevant documents pertaining to a key issue in the case from Mr. Yuncza until days before the final pretrial conference at which time it produced them to Plaintiff's counsel.  Unlike Fitz, there is no dispute here as to what constitutes compliance with Rule 26.  Both parties agree that the University had a duty to produce the documents at issue and failed to do so until the eve

8

of the final pretrial conference. Therefore, the Court finds that the University failed to meet its burden of showing substantial justification under Rule 37. However, the Court finds no evidence of bad faith or willfulness on the part of the University in its violation of Rule 26.

### 2. Harm to Plaintiff

In determining whether the failure to disclose was harmless under Rule 37(c)(1), the Third Circuit identified four factors as being helpful: (1) prejudice or surprise to the party against whom evidence is offered; (2) ability to cure the prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness of the non-compliant party. In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. 498, 506 (D.N.J. 2005) (citing Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995) (citing Bronk v. Ineichen, 54 F.3d 425, 432 (7th Cir. 1995)). The Third Circuit has also considered the importance of the evidence to the party offering it. Astrazeneca AB v. Mutual Pharm. Co., Inc., 278 F. Supp. 2d 491, 504 (E.D. Pa. 2003) (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904 (3d Cir. 1977)). The Court must then weigh the factors to determine the appropriate sanction. See Thomas & Betts Corp. v. Richards Mfg. Co., No. 01-4677, 2006 U.S. Dist. LEXIS 29660, at * 12 (D.N.J. May 15, 2006); In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. at 508 (D.N.J. 2005).

#### a. Prejudice and Cure

Prejudice may include the "burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy" and need not be irremediable. Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003). In In re Mercedes-Benz, the Court refused to speculate on how plaintiffs would have used the additional information disclosed in an affidavit or what other information plaintiffs might have found had they deposed the witness.

9

Instead the Court held that the fact "[t]hat plaintiffs would have questioned a representative from MBUSA on this issue had MBUSA disclosed the names of persons with such relevant information amounts to prejudice to plaintiffs in the eyes of this Court." In re Mercedes-Benz, 225 F.R.D. at 506. The Court noted that "harmlessness should not be defined by whether the aggrieved party has the ability to spend more money and resources to scramble through an unanticipated deposition," but "[t]hat is not to say, however, that any prejudice to plaintiffs could not be cured by allowing them to depose [the witness] and file a supplemental brief." Id. at 507.

In the present matter, Plaintiff's counsel stated at oral argument that she developed her trial strategy, including which witnesses she would depose, based on the documents produced by Defendants during discovery and her client's limited resources. She contended that had the documents at issue been produced when requested, she would have deposed Mr. Yuncza. Further, both parties' counsel agreed at oral argument that the untimely documents are relevant to a crucial issue in this case, whether Mr. Yuncza assumed Mr. Ufer's role as Payroll Manager. Therefore, the Court finds that at this late stage, with discovery having closed and the final pretrial conference having been conducted, Plaintiff is prejudiced by the University's untimely production of these relevant documents. However, the Court also finds that Plaintiff's prejudice can be cured, at least in part, by allowing Plaintiff to depose Mr. Yuncza regarding the documents and by requiring the University to bear the costs of the deposition. The Court notes that Plaintiff does not seek to depose Fred Clarke, the second witness relevant to the documents produced by the University.

      **b.**    **Likelihood of Disruption**

Although discovery closed on December 19, 2005 and the final pretrial order was

entered on January 31, 2007, no trial date has been set in this matter. Therefore, the University's failure to produce the documents is likely to create minimal, if any, disruption of trial.

### c. Bad Faith or Willfulness

With regard to whether the University's untimely production of relevant documents was in bad faith or willful, Plaintiff's counsel suggested at oral argument that Mr. Yuncza knowingly withheld the information until this late date. However, the University's counsel denied that failure to produce the documents during discovery was the result of bad faith or willfulness. Instead, the University's counsel stated that she received a call on Friday, January 12, 2007 regarding these documents and produced them to Plaintiff's counsel on Monday, January 15, 2007. Although the University had an obligation to produce these documents two years earlier, the Court finds no evidence of bad faith or willfulness on the part of the University or its counsel.

### d. Importance of Evidence

The final factor considered by the Third Circuit is the importance of the evidence to the party offering it. There is no dispute in this case that the information produced by the University on January 15, 2007 is crucial to the instant case. The documents are relevant to whether Mr. Yuncza replaced Mr. Ufer as Payroll Manager as part of the University's remedial measures. This is a key issue in the case, critical to both Plaintiff's assertions and the University's defenses, as noted by both parties' counsel at oral argument. Therefore, the Court finds that the evidence is crucial to the present matter.

### 3. Weighing the Factors

Although the Court has discretion to impose sanctions under Rule 37, the exclusion of

critical evidence is an "extreme" sanction not ordinarily imposed absent a showing of "willful deception" or "flagrant disregard" for a court order. Meyers, 559 F.2d at 905 (quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 99 (3d Cir. 1977). Instead of excluding evidence, Rule 37 permits the Court to impose other appropriate sanctions for violations of Rule 26. See Fitz, 174 F.R.D. at 591 (requiring the plaintiffs to reimburse the defendants for attorneys' fees and costs incurred in deposing nine declarants and in preparing a supplemental brief in order to level the playing field).

      Considering all of the factors, the Court concludes that the University's failure to produce the documents during discovery was not harmless. The factors identified by the Third Circuit support that Plaintiff is prejudiced by this discovery violation. However, based on the remaining factors, the Court concludes that exclusion of documents at trial and striking of the University's affirmative defenses are extreme sanctions not supported by the circumstances of this case. Therefore, the Court will deny Plaintiff's motion as it relates to exclusion of documents and striking of affirmative defenses.

      However, the ability to cure the violation, the unlikelihood of disruption to trial, the absence of bad faith or willfulness on the part of the University, and the importance of the information to both parties, leads this Court to conclude that a sanction other than exclusion is appropriate. Therefore, the Court will fashion its own remedy narrowly tailored to the University's violation of Rule 26 and the subsequent prejudice to Plaintiff. Accordingly, the Court finds that the most appropriate sanction for the University's violation of Rule 26 is to re-open the deposition of Mr. Yuncza. The Court notes that although the University did not violate any specific court order regarding discovery, its untimely production of relevant documents

caused prejudice to Plaintiff. Therefore, the Court finds that the University shall bear the expense of the reasonable attorneys' fees and costs associated with the deposition of Mr. Yuncza.

The University contends that attorneys' fees for this motion are not an appropriate sanction because Plaintiff failed to adequately confer with University counsel regarding production of the documents prior to filing a motion for sanctions. At oral argument the University's counsel argued that Plaintiff's counsel sent two email communications and waited only a couple of hours for a response prior to filing the present motion. Local Civil Rule 37.1 requires counsel to "confer to resolve any discovery dispute" before addressing the issue with the Court. L.Civ.R. 37.1. Therefore, the Court finds that attorneys' fees for the present motion are not an appropriate sanction because Plaintiff made no meaningful effort to meet and confer regarding this issue prior to filing a motion for sanctions.

### III.　CONCLUSION

For the reasons expressed here, the Court finds that Plaintiff's Motion for Sanctions is granted in part and denied in part. The University admittedly violated Rule 26 by producing crucial documents days before the final pretrial conference and long after discovery had closed which caused prejudice to Plaintiff. Pursuant to Rule 37 and the factors identified by the Third Circuit, the Court finds that the prejudice to Plaintiff can be cured, the likelihood of disruption of trial is minimal, there is no evidence of bad faith or willfulness on the part of the University, and the evidence is crucial to both parties.

Therefore, the Plaintiff's motion for exclusion of the documents at trial is denied. Further, Plaintiff's motion to strike the University's affirmative defenses is also denied because both of these sanctions are too extreme based on the circumstances of the case. However, the

Court finds that it is appropriate to allow Plaintiff to depose Mr. Yuncza and require the University to pay the reasonable attorneys' fees and costs of the deposition. Following the deposition, Plaintiff's counsel shall confer with the University's counsel to discuss the resolution of attorneys' fees. If the parties are unsuccessful in reaching a resolution, Plaintiff shall file a petition for attorneys' fees with the Court. The University will have 10 days after the filing of Plaintiff's petition to submit objections to the reasonableness of the fees. The Court will not require the University to pay the attorneys' fees associated with the present motion because of Plaintiff's counsel's failure to adequately meet and confer as required by Local Civil Rule 37.1 prior to filing this motion.

An appropriate Order accompanies this Memorandum Opinion

**Dated: February 28, 2007.**